## PHILADELPHIA, B. & W. R. CO. v. McCONNELL.

(Circuit Court of Appeals, Third Circuit. December 9, 1915.)

### No. 1956.

COMMERCE ☞27—EMPLOYERS' LIABILITY ACT—EMPLOYÉ "EMPLOYED IN INTERSTATE COMMERCE."

Plaintiff was assistant foreman of the gang on a work train on defendant's railroad, and was injured while the train was engaged in removing old rails, which had been replaced, from between the tracks where they had been left. The movement of the train on that day was wholly within one state, but the tracks extended into other states and were constantly used by defendant in both interstate and intrastate commerce. *Held*, that the work being done was necessary in keeping the tracks and roadbed in suitable condition for interstate commerce, and that plaintiff was at the time "employed" in such commerce within the meaning of Employers' Liability Act April 22, 1908, c. 149, § 1, 35 Stat. 65 (Comp. St. 1913, § 8657), and could maintain an action thereunder.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. ☞27.

For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Action at law by William R. McConnell against the Philadelphia, Baltimore & Washington Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

John Hampton Barnes, of Philadelphia, Pa., for plaintiff in error.

Owen J. Roberts, of Philadelphia, Pa., and James D. Carpenter, Jr., of Jersey City, N. J., for defendant in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. The question is whether the work the plaintiff was doing at the time of his injury was so related to interstate commerce as to bring him within the provisions of the Federal Employers' Liability Act of April 22, 1908, c. 149, 35 Statutes at Large, 65.

The plaintiff was assistant foreman of a gang on one of the defendant's work trains. The main business of the work train and its gang was to deliver supplies for repair and maintenance of the four track roadway or main line of the defendant company from a point in Pennsylvania to a point in Delaware, and by removing and carrying away used and discarded materials, to keep clear and clean its tracks and roadbed. A few days before the injuries to the plaintiff, the work train in question had taken new rails to a place where a track was to be repaired. The old rails were removed and the new ones installed. On the day the plaintiff was injured, the same train and gang were engaged in removing the old rails from where they had been left between the tracks. Travel over the roadbed of the defendant company at this point is very heavy, and interstate and intrastate trains pass over all the tracks every few minutes. While the plaintiff was on a car in the performance of his duties, members of the gang, under the supervision of the foreman, threw a rail upon the car in such a manner that one end projected beyond the side of the car and was struck by a passing train and thrust against the plaintiff, causing him the injuries of which he complains.

The errors assigned are two:

1. The refusal of the court to direct the jury that, under all the evidence, the verdict must be for the defendant.

2. The refusal of the court to direct the jury to render a verdict for the defendant, upon the ground that the plaintiff was not entitled to recover under the Federal Employers' Liability Act.

With respect to the first error assigned, we may briefly say, that, as there was a conflict of testimony as to what had occurred, the question of negligence was for the jury. Whether under the second assignment, the case was for the jury, or whether error was committed in refusing to withdraw it from the jury, depends upon whether the plaintiff, at the time of his injury, was employed in interstate commerce.

In order to determine this question, we must ascertain the nature of the work in which the plaintiff was employed with respect to the commerce to which it related, and as his injury was the result of negligence of a fellow servant, which is a risk from the assumption of which he is relieved only by the Federal Employers' Liability Act when it applies, we must inquire whether the work the plaintiff was doing at the time of his injury was within the contemplation of that act.

The right to recover arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employee is employed by the carrier in such commerce. Pedersen v. D. L. & W. R. R. Co., 229 U. S. 146, 150, 33 Sup. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153. There is no question that the defendant was engaged in interstate commerce. Therefore, we are concerned only with the nature of the work in which, at the time, the plaintiff was employed. That work was in connection with an instrumentality of commerce then and theretofore constantly, though not wholly, used in interstate commerce, and therefore to be distinguished from the facts and not to be controlled by the law of the case of Bravis v. C. M. S. P. Ry. Co., 217 Fed. 234, 236, 133 C. C. A. 228. The work of the train on which the plaintiff was employed had nothing to do with the immediate or direct movement of interstate commerce. Being a repair train, its direct relation was to instrumentalities of commerce rather than to the movement of commerce. With respect to its movement on the day of the accident, its journey was defined and was wholly within the State of Pennsylvania. It was not a drifting train as in Pennsylvania R. R. Co. v. Knox, 218 Fed. 748, 134 C. C. A. 426. The work of the plaintiff at the time of his injury was similar to that of Pedersen at. the time of his injury (Pedersen v. D. L. & W. R. R. Co., supra) in that it related to the roadway of the railroad company over which moved indiscriminately interstate and intrastate traffic, and was distinguished from the work in which Pedersen was employed only in the respect that Pedersen was carrying materials to a point upon the roadway or bridge for the purpose of repairing it, while McConnell, the plaintiff, was carrying materials from the roadway after it had been repaired. How far does the Pedersen Case control this case?

In considering the nature of the work in which Pedersen was employed at the time of his injury, the court in the Pedersen Case, said:

"Among the questions which naturally arise in this connection are these: Was that work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? The answers are obvious. Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency * * * in its cars, engines, appliances, machinery, *track, roadbed*, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute, we are of

opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it."

If, as held in the Pedersen Case, carrying materials to the place where repair work is to be done is so closely related to interstate commerce as to be a part of it, then carrying materials from the place after repair work has been done is just as closely related to, and, for the same reason, must be a part of it. The questions asked and answered by the court in the opinion in the Pedersen Case, we believe apply with equal force and precision to the facts of this case. Here the work was not being done independently of the interstate commerce in which the defendant was engaged, nor was the performance of the work a matter of indifference so far as that commerce was concerned. The removal of old rails from between the tracks on the roadbed of a railroad over which moves heavy traffic, both interstate and intrastate, constitutes keeping the tracks and roadbed in suitable condition for interstate commerce, and is as necessary for the proper maintenance of the tracks and roadbed as renewing the tracks. The work of which the plaintiff's was a part, was the repair of the roadbed by replacing old rails with new ones. This included removing old rails and installing new ones. The work of removing old rails was not complete when they were lifted from their place upon the ties and tossed upon the roadbed, but was complete only when they were carried away from the place where they lay between the tracks. The removal of old rails was as much a part of the repair work as the bringing of new rails to the place to be repaired. If this be true, this case is within the Pedersen Case, and believing it to be true, we feel that this case is ruled by the principle declared by the Supreme Court in that case.

The judgment below is affirmed.