### Lena Lewis, Administratrix of the Estate of George W. Lewis, Deceased, Appellee, v. The Cleveland, Cincinnati, Chicago & St. Louis Railway Company, Appellant.

1. MASTER AND SERVANT—*section hand assisting in making measurements preliminary to construction of switch track not employed in interstate commerce.* A section hand in the employ of an interstate railroad who was injured while assisting a member of the employer's engineering staff in making certain measurements preliminary to a determination of the feasibility of constructing a requested switch track connecting with the main line, was not injured while employed in interstate commerce within the meaning of the federal Employers' Liability Act.

2. MASTER AND SERVANT—*direction of verdict for defendant in action under federal Employers' Liability Act where evidence shows employee not employed in interstate commerce at time of injury.* Where in an action under the federal Employers' Liability Act for injuries to a section hand the defendant by special plea set up that the employee was not employed in interstate commerce at the

time of his injury, and that his remedy, if any, was under the Workmen's Compensation Act, and the evidence disclosed that he was not employed in such commerce at the time of the injury, it was error to deny defendant's motions, at the close of the plaintiff's case and at the close of all the evidence, to direct a verdict for defendant.

Appeal by defendant from the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the October term, 1925. Reversed. Opinion filed April 27, 1926.

D. E. KEEFE and HENRY G. MILLER, for appellant; H. N. QUIGLEY and S. W. BAXTER, of counsel.

GEERS & GEERS, for appellee.

MR. PRESIDING JUSTICE BOGGS delivered the opinion of the court.

This appeal is prosecuted by appellant to reverse a judgment for $16,500, recovered by appellee at the May term, 1925, of the circuit court of Madison county, in an action brought under the Federal Employers' Liability Act [Cahill's St. ch. 114, ¶¶ 321-329] for the alleged negligent causing of the death of appellee's intestate.

The declaration charges among other things that on October 25, 1924, and prior thereto, appellant was possessed of, using and operating in interstate commerce a certain railroad extending from St. Louis, Missouri, through Illinois to Cleveland, Ohio; that appellee's intestate was prior thereto and on said date, a servant of appellant, employed in interstate commerce as a section hand, or track laborer; that on said date, while so engaged, a certain other servant of appellant, working with appellee's intestate, in attempting to measure the height of certain high tension wires above the ground, carelessly, negligently and improperly threw a long metallic tape over and across one of said high tension wires; that said tape while in contact with said wire struck appellee's intestate,

whereby he was instantly killed; that appellee's intestate left him surviving appellee, his widow, and a son, alleging damages, etc.

To said declaration appellant filed a plea of the general issue, and a special plea setting forth that it was an employer operating under and subject to the Workmen's Compensation Law, and that appellee's intestate at the time he was killed was not engaged in interstate commerce, and that appellee's remedy, if any, was under the Workmen's Compensation Act.

A replication traversing said special plea was filed by appellee, and a trial was had, resulting in a verdict for $25,000. A remittitur was filed by appellee, reducing said verdict to $16,500. and judgment was rendered thereon.

The record discloses that appellant had received an application from the Standard Oil Company for the construction of a track to connect its bulk station near Gillespie, Illinois, with appellant's main track near that point. The poles of the Illinois Power and Light Company, supporting a high tension wire, were located either on the extreme outer edge of appellant's right of way, or immediately abutting the same; just which, the record fails to disclose definitely. Appellant's division engineer had sent to Leslie T. Doolin, appellant's section foreman under whom appellee's intestate was employed, a blue print, showing a section of appellant's right of way located about one mile east of Gillespie, and had directed Doolin to locate on said blue print the distance which the poles supporting the high tension wire of the Illinois Power and Light Company stood from the ball of the north main rail of appellant's track, and the distance that said poles stood apart.

On the morning of October 25, 1924, said section foreman, with Guy Smith, another member of said section gang, and appellee's intestate, were making certain measurements along the north rail of appel-

lant's track, and prior to the accident had measured the distance from the rail in question to the poles supporting said high tension wire. Immediately after those measurements had been made, Doolin desired to measure the height of said high tension wires above the ground. He testified: "I told Mr. Lewis and Mr. Smith to stand back, and I would do the measuring. I was going to measure with this metallic tape." Smith and appellee's intestate then stood back, and Doolin threw the metallic tape over the high tension wire. The tape in some way came in contact with appellee's intestate, and he was instantly killed.

· In order for appellee to recover, the evidence must show that at the time of the death of her intestate, both he and appellant were engaged in interstate commerce. *St. Louis, S. F. & T. Ry. Co. v. Seale,* 229 U. S. 156-158, 57 L. Ed. 1129; *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146-150, 57 L. Ed. 1125 [3 N. C. C. A. 779]; *North Carolina R. Co. v. Zachary,* 232 U. S. 248-256, 58 L. Ed. 591 [9 N. C. C. A. 109]; *Illinois Cent. R. Co. v. Behrens,* 233 U. S. 473-478, 58 L. Ed. 1051 [10 N. C. C. A. 153].

The test to determine whether an employee was engaged in interstate commerce is the nature of the work being done at the time of the injury. The mere expectation that the employee would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act. *Erie R. Co. v. Welsh,* 242 U. S. 303, 61 L. Ed. 219; *Illinois Cent. R. Co. v. Behrens, supra,* 478. Each case must be decided in the light of the particular facts, with the view of determining whether at the time of the injury the employee was engaged in interstate commerce, or in an act which was so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof. *Erie R. Co. v. Welsh, supra,* 306; *New York Cent. & H. River R. Co. v. Carr,* 238 U. S. 260-264, 59 L. Ed. 1298 [9 N. C. C.

336 APPELLATE COURTS OF ILLINOIS.

Lewis v. The C., C., C. & St. L. Ry. Co., 240 Ill. App. 332.

A. 1] ; *Jackson v. Chicago, M. & St. P. R. Co.,* 210 Fed. 495; *Devine v. Chicago, R. I. & P. R. Co.,* 266 Ill. 248; *Patry v. Chicago & W. I. R. Co.,* 265 Ill. 310.

The evidence in this case with reference to the purpose of the measurements being made at the time appellee's intestate met his death is practically confined to the testimony of Doolin, the section foreman. He testified: "We had to locate those high tension poles on a blue-print because of a proposed new track for the Standard Oil Co. * * * The proposed track was to be a side track off the main track and, if it were laid, would connect up with the Big Four. There was no side track laid at the time, or any preparations for laying it, outside of the measurements we were making. There had been no grading or anything of that kind done for the purpose of laying any side track. In taking the measurements as to where those poles stood, I made a record and returned it to the division engineer's office. * * * I wanted to get the exact height of the Illinois Power & Light Company's high tension wire above the ground. That information was required so that the division engineer would know the height he would have to raise the wire for the proposed track."

In *Illinois Cent. R. Co. v. Behrens, supra,* the court at page 478 says:

"Giving to the words 'suffering injury while he is employed by such carrier in such commerce' their natural meaning, as we think must be done, it is clear that Congress intended to confine its action to injuries occurring when the particular service in which the employee is engaged is a part of interstate commerce. The act was so construed in *Pedersen v. Delaware, L. & W. R. Co.,* 229 U. S. 146. It was there said (p. 150): 'There can be no doubt that a right of recovery thereunder arises only where the injury is suffered while the carrier is engaged in interstate commerce and while the employee is employed by the carrier in such

commerce.' Again (p. 152): 'The true test always is: Is the work in question a part of the interstate commerce in which the carrier is engaged?' * * * *Mondou v. New York, N. H. & H. R. Co., supra* [223 U. S. 1, 1 N. C. C. A. 875]; *Seaboard Air Line Ry. v. Moore,* 228 U. S. 433; *St. Louis, S. F. & T. Ry. Co. v. Seale,* 229 U. S. 156, 158; *North Carolina R. Co. v. Zachary,* 232 U. S. 248, 256; *Grand Trunk Western Ry. Co. v. Lindsay,* 233 U. S. 42.

"Here, at the time of the fatal injury, the intestate was engaged in moving several cars, all loaded with intrastate freight, from one part of the city to another. That was not a service in interstate commerce, and so the injury and resulting death were not within the statute. That he was expected, upon the completion of that task, to engage in another which would have been a part of interstate commerce, is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury. The question is accordingly answered in the negative."

And in *Kinzell v. Chicago, M. & St. P. R. Co.,* 250 U. S. 130 [19 N. C. C. A. 1], the court says:

"In *Pedersen v. Delaware, L. & W. R. Co., supra,* it is stated that a guide to a decision of such a case as we have here may be found in the questions: Was the work being done independently of the interstate commerce in which the company was engaged, or was it so closely connected therewith as to be a part of it? Was its performance a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? And in other cases it is said in substance that in such inquiries may be found the true test of employment in such commerce in the sense intended by the act."

Counsel for appellee seem to base their argument that appellee's intestate was engaged in interstate commerce upon the fact that the evidence shows that

338     Appellate Courts of Illinois.

Lewis v. The C., C., C. & St. L. Ry. Co., 240 Ill. App. 332.

the foreman and appellee's intestate and Smith were making certain measurements along the rails of appellant's road. The evidence, however, shows that such measurements were being made at the instance of one of appellant's division engineers, looking toward the possible or probable building of a track to the property of the Standard Oil Company, but whether that track would ever be built or not is not disclosed by the evidence.

In *Bravis v. Chicago, M. & St. P. Ry. Co.*, 217 Fed. 234, the court at page 236 says:

"The Federal Employers' Liability Act protects only those employed in interstate commerce. Those employed in the preparation or construction of road-beds, rails, ties, cars, engines and other instrumentalities which are intended for use in interstate commerce, but have never been and are not in use therein, are not employed in interstate commerce, and are not protected by that act."

And in *Jackson v. Chicago, M. & St. P. Ry. Co.*, 210 Fed. 495, the court at page 498 says:

"Stripped of the conclusions in the complaint, we have the fact that the defendant is engaged in constructing a 'cut-off' on its line of road so as to shorten the route used by it now and eliminate some of the inconveniences, and possible expense, in the operation of the line at the present time. * * * The building of this cut-off is a facility which is to be used by the defendant, when completed, as an engine or cars, or any other appliance under construction might be considered for use when completed. Can it be said that a person engaged in the building of engines or cars, or any other facilities to be used by a common carrier engaged in interstate commerce, comes within the provisions of the Employers' Liability Act? The Act deals only with the liability of a carrier engaged in interstate commerce for injuries sustained by its employees while engaged in such commerce. *Second*

*Employers' Liability Cases*, 223 U. S. 1, 32 Sup. Ct. 169, 56 L. Ed. 327, 38 L. R. A. (N. S.) 44 [1 N. C. C. A. 875]. The Act is not 'concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper condition after they have become such instrumentalities, and during their use as such.' *Pedersen v. Delaware, L. & W. R. Co.*, 229 U. S. 146, 152, 33 Sup. Ct. 648, 57 L. Ed. 1125. The language of the complaint, 'when completed, the interstate commerce * * * will be routed' through the tunnel, conclusively shows that it is not now so employed; hence the Act cannot apply, and Supreme Court decisions *supra* are decisive.''

And in *Heed v. Industrial Commission*, 287 Ill. 505, our own Supreme Court, referring to *Minneapolis & St. L. R. Co. v. Winters*, 242 U. S. 353 [13 N. C. C. A. 1127], said:

''In that case a machinist's helper engaged in making repairs in the roundhouse upon an engine which had been used in hauling freight trains in both interstate and intrastate freight, and which was used in the same way after the accident, was held not to be employed in interstate commerce within the meaning of the Federal Employers' Liability Act. The court said that an engine, as such, is not permanently devoted to any kind of traffic, and its character as an instrument of commerce depends upon its employment at the time and not upon remote probabilities or accidental later events; that the case was not like repairs on a road permanently devoted to commerce between the States, nor like the case of an engine interrupted in an interstate haul and then to go on again with the haul. Pierce was not engaged in interstate commerce.''

Tested by the rule laid down in the foregoing authorities, we are of the opinion and hold that appel-

lee's intestate, just prior to and at the time of receiving the injury which caused his death, was not engaged in interstate commerce. The motions for a directed verdict, made by appellant at the close of appellee's evidence and again at the close of all the evidence, should have been allowed, and the court erred in denying the same.

For the reasons above set forth, the judgment of the trial court will be reversed.

*Judgment reversed.*